IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE GONZALEZ              :        CIVIL ACTION
                Petitioner :
        v.                 :
                           :
JEFFREY BEARD, et al.      :
                Respondents :      No. 10-4824

### MEMORANDUM

J. WILLIAM DITTER, JR., J.                          September 28, 2012

Presently before this court is a pro se petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by Jose Gonzalez, Respondents' answer and Gonzalez's

reply.  Gonzalez is currently incarcerated in the State Correctional Institution in Somerset,

Pennsylvania.  For the reasons that follow, the petition will be denied.

### FACTS AND PROCEDURAL HISTORY:

After a jury trial, Gonzalez was found guilty of murder in the first degree,

conspiracy to commit murder in the first degree, and conspiracy to commit aggravated

assault.[1]  On March 11, 2005, Gonzalez was sentenced to life imprisonment and a

concurrent term of 20-40 years.

Gonzalez filed a direct appeal arguing that the evidence was insufficient to support

his convictions.  The Pennsylvania Superior Court affirmed the judgment of sentence on

---

[1]Gonzalez was convicted in the murder of Hipolito "Polo" Sanabria.  As the Superior
Court pointed out, "the Commonwealth presented no evidence that [Gonzalez] was the shooter,
but rather pursued a conviction for murder of the first degree based upon principles of vicarious
liability."  Commonwealth v. Gonzalez, No. 180 MDA 2009, at 3 n.2 (Pa.Super. Oct. 19, 2009)
(unpublished memorandum).

August 8, 2006.  Commonwealth v. Gonzalez, No. 1431 MDA 2005 (Pa. Super. Aug. 8, 2006) (unpublished memorandum).  The Pennsylvania Supreme Court denied Gonzalez's petition for allowance of appeal on December 29, 2006.  Commonwealth v. Gonzalez, No. 747 MAL 2006 (Pa. Dec. 29, 2006).

On October 9, 2007, Gonzalez filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. § 9541, et seq.  Appointed counsel filed an amended PCRA petition on June 9, 2008.  After the court held an evidentiary hearing on June 23, 2008, appointed counsel filed a brief in support of Gonzalez's amended PCRA petition on July 28, 2008.  The PCRA court denied Gonzalez's petition as meritless on December 31, 2008.  Upon PCRA review, the Pennsylvania Superior Court characterized Gonzalez's four (4) claims as "founded upon a single asserted premise that prior counsel were ineffective for failing to understand the legal principle that an accomplice, as well as a coconspirator, must individually possess a specific intent to kill to be held liable for a murder of the first degree committed by another." Commonwealth v. Gonzalez, No. 180 MDA 2009, at 3 (Pa. Super. Oct. 19, 2009) (unpublished memorandum).  The Pennsylvania Superior Court affirmed the denial of PCRA relief on October 19, 2009.  Commonwealth v. Gonzalez, No. 180 MDA 2009 (Pa. Super. Oct. 19, 2009).  The Pennsylvania Supreme Court denied Gonzalez's petition for allowance of appeal on May 27, 2010.  Commonwealth v. Gonzalez, No. 855 MAL 2009 (Pa. May 27, 2010).

Gonzalez filed a petition for a federal writ of habeas corpus on September 10, 2010,[2] claiming:

    1) the evidence at trial was insufficient to support his convictions; and

    2) the jury instructions for accomplice liability and first degree murder unconstitutionally relieved the state's burden of proof.

Respondents have filed an answer to Gonzalez's habeas petition asserting that Gonzalez is not entitled to federal habeas relief because his claims are procedurally defaulted and/or meritless.  Gonzalez has filed a reply thereto.

**DISCUSSION:**

    **A.**    **Standard of Review**

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence

---

    [2]This court will presume that Gonzalez's petition was given to prison authorities on the date on which it was signed, September 10, 2010, and his petition will be deemed filed as of that date.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988) (a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court).  Thus, he is within the one-year limitations period of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  28 U.S.C. § 2244(d)(1)(A) (a petitioner must file a habeas petition within one year of the date on which the judgment of sentence becomes final by the conclusion of direct appeal or the expiration of time for seeking such review).

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S. 362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  529 U.S. at 412-413 (quoted in Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000)).  The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable."  Id. at 409.  "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable."  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing Williams, 529 U.S. at 411).

### 1.      Sufficiency of the Evidence

Gonzalez first argues that the evidence produced at trial was insufficient to sustain his conviction for first degree murder, conspiracy to commit first degree murder, and conspiracy to commit aggravated assault.  It has long been established that due process requires that a person can only be convicted of the crime with which he is charged by proof of every element of the criminal offense beyond a reasonable doubt.[3]  Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970); Davis v. United States, 160 U.S. 469, 488 (1895).  Claims challenging the sufficiency of the evidence "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  Coleman v. Johnson, _ U.S. _ , 132 S.Ct. 2060, 2062 (2012) (per curiam).  As the Supreme Court has explained:

> First, on direct appeal, "it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (citing Cavazos v. Smith, 565 U.S. 1, 132 S.Ct. 2, 4 (2011) (per curiam)) (citation omitted).

---

[3]When reviewing a sufficiency of the evidence claim on habeas corpus review, federal courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law.  Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).

In reviewing a challenge to the sufficiency of the evidence, a court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Sullivan v. Cuyler</u>, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting <u>Jackson</u>, 443 U.S. at 319) (emphasis in original); <u>see also</u> <u>McDaniel v. Brown</u>, _ U.S. _ , 130 S.Ct. 665, 673 (2010). The task of resolving differences in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts is reserved for the factfinder and is beyond the scope of federal habeas sufficiency review. <u>Jackson</u>, 443 U.S. at 319. However, "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." <u>Johnson</u>, 132 S.Ct. at 2064. In the instant case, I conclude that the state courts' application of the state court equivalent of the <u>Jackson</u> standard was within the bounds of reasonableness.[4]

### a.    First Degree Murder

In order to sustain a finding of first-degree murder under Pennsylvania law, "the evidence must establish that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with a specific intent to kill." <u>Commonwealth v. Mitchell</u>, 902 A.2d 430, 444 (Pa. 2006) (citing 18 Pa. Cons. Stat. Ann. § 2502(a); <u>Commonwealth v. Spotz</u>, 759 A.2d 1280, 1283 (2000)). "Specific

---

[4]Although the state court did not specifically cite <u>Jackson</u>, Pennsylvania law comports with the <u>Jackson</u> standard. <u>See</u> <u>Evans v. Court of Common Pleas, Delaware County</u>, 959 F.2d 1227, 1232 (3d Cir. 1992).

intent to kill can be established through circumstantial evidence such as the use of a

deadly weapon upon a vital part of the victim's body."[5]  Id.

As previously noted, Gonzalez was found guilty of first degree murder as an

accomplice.  Commonwealth v. Gonzalez, No. 180 MDA 2009, at 3 n.2 (Pa. Super. Oct.

19, 2009) (unpublished memorandum); App. to Answer to Pet., at A391 n.2.  The crux of

Gonzalez's argument is that there was insufficient evidence for the jury to convict him of

---

[5]The facts underlying the discovery of the murder were outlined by the state court as follows:

> [O]n October 6, 2001, Officer George Taveras of the Reading [P]olice Department responded to the report of a shooting at 348 North 9th Street in the City of Reading.  When he arrived at the scene, he entered the building with the assistance of two other Reading Policemen.  When they reached the top of the stairs leading to a third floor apartment, the officers discovered a partially-open door revealing the body of the victim, Hipolito "Polo" Sanabria, lying in a pool of his own blood on the kitchen floor.  N.T. 1/25/2005 pp. 109-114.  After performing a security sweep of the apartment, an EMS employee entered and checked Polo's vital signs, but he was non-resuscitable; "pulseless, without a heartbeat, breathless, without breathing."  Id. at 127-128.

> Investigators from the Reading Police Department located several .45 caliber bullet casings.  Id. at 140-141.  An autopsy performed by Dr. Saralee Funke at the Lehigh Valley Hospital revealed that the victim died as a result of gunshot wounds to his chest and cheek.  The bullet entering his left side traveled through both lungs and his heart, resulting in massive internal bleeding.  The bullet entering his left cheek broke part of his lower jaw, passing through muscle tissue and eventually breaking part of this spine.  It was Dr. Funke's testimony that both of the wounds would have been fatal individually.  N.T. 1/26/2005 pp. 274-276.  She also determined that the victim was shot at close range, at a distance of around one (1) to one and one-half (1½) feet.  Id. at 278.

Commonwealth v. Gonzalez, No.418/04 at 4 (Berks Co. Ct. Com. Pl. Dec. 30, 2005); see also Commonwealth v. Gonzalez, 1431 MDA 2005, slip op. at 1-2 (Pa. Super. August 8, 2006) (unpublished memorandum).

first degree murder because there was no evidence of his specific intent to kill the victim.

Under 18 Pa. Cons. Stat. Ann. § 306(c), a person can be an accomplice with respect to the

commission of a particular crime only if that person has "the intent of promoting or

facilitating" the commission of "that crime."[6]   The Commonwealth need not prove that an

accomplice actually performed the killing, but it must prove he intended for the killing to

occur.   See Commonwealth v. Bachert, 453 A.2d 931, 935-36 (Pa. 1982).

Gonzalez also argues that the evidence was not sufficient to convict him of

conspiracy to commit first degree murder.  As explained by the Pennsylvania Supreme

Court, to prove conspiracy, "the trier of fact must find that: (1) the defendant intended to

commit or aid in the commission of the criminal act; (2) the defendant entered into an

agreement with another . . . to engage in the crime; and (3) the defendant or one or more

of the other co-conspirators committed an overt act in furtherance of the agreed upon

crime."[7]  Commonwealth v. Montalvo, 956 A.2d 926, 932 (Pa. 2008) (quoting

---

[6]The accomplice liability statute provides that a person is an accomplice of another
person in the commission of an offense if:
>     (1) with the intent of promoting or facilitating the commission
>     of the offense, he:
>> (i) solicits such other person to commit it; or
>> (ii) aids or agrees or attempts to aid such other
>> person in planning or committing it.

See 18 Pa. Cons. Stat. Ann. § 306(c).

[7]Pursuant to Pennsylvania law, a person is guilty of conspiracy with another person or
persons to commit a crime if with the intent of promoting or facilitating its commission he:
>     (1) agrees with such other person or persons that they or one or more of
>     them will engage in conduct which constitutes such crime or an attempt or
>     solicitation to commit such crime; or
>     (2) agrees to aid such other person or persons in the planning or

Commonwealth v. Murphy, 844 A.2d 12228, 1238 (2004)).  "Finally, each member of a

conspiracy to commit homicide can be convicted of first-degree murder regardless of who

inflicted the fatal wound."  Id. (citing Commonwealth v. Wayne, 720 A.2d 456, 460 (Pa.

1998); see 18 Pa. Cons. Stat. Ann. § 2502(a).  A co-conspirator must be found to have

specific intent to kill.  Commonwealth v. Rios, 721 A.2d 1049, 1053 (Pa. 1998) (citing

Spotz, 716 A.2d 580).  "Whether an accomplice possessed the same intent to kill as his

co-conspirator may be inferred from words, conduct, the attendant circumstances . . . and

all reasonable inferences that follow from them."  Id.

> The state court summarized the relevant facts of this case as follows:

> John Iannuzzo was present on the night the victim was killed.  Mr.
> Iannuzzo testified that he was in the victim's apartment with some
> friends at the time of the shooting.  He had been in the living room
> area but was told by the victim to go back into the bedroom.  He was
> able to identify [Gonzalez] as one of the men present in the
> apartment at that time.  N.T. 1/25/2005 pp. 170-175.  Mr. Iannuzzo
> testified that shortly thereafter, he witnessed [Gonzalez] enter the
> bathroom and adjust his shirt before exiting.  He then heard four
> gunshots.  N.T. 1/25/2005 pp. 174-175.

> * * *

> Victor Rodriquez-Ballestor testified that on the evening of the
> murder, a known friend of [Gonzalez's] named Ricardo "Choco"
> Santana had asked the victim to "cook" 14 grams of cocaine into
> crack.  However, not knowing how to do so, the victim "messed it
> up" by pouring beer in the cocaine, rendering the material useless.
> Id. at 200.  Later that evening, Rodriguez-Ballestor saw [Gonzalez],

---

commission of such crime or of an attempt or solicitation to commit such
crime.
See 18 Pa. Cons. Stat. Ann. § 903(a)(1), (2).

his friend Choco and a third man named Hillary ("Eli") enter the victim's apartment.  Id. at 186.  He testified that Choco had a nickel-plated .45 on his person in the front of his waistband by his belt buckle.  Id. at 187-190.  Rodriguez-Ballestor then heard gunshots immediately followed by Choco stopping at his door and declaring "we killed the guy."  Id. at 190.

On the second day of the trial, the Commonwealth examined Ms. Maria Carrasquillo, another friend of the victim and a frequenter of his residence.  She was familiar with [Gonzalez] and Choco, as they would routinely sell drugs on the corner of North 9th Street.  N.T. 1/26/2005 p. 248.  It was her testimony that on the night of the victim's death, she had the occasion to see Choco and [Gonzalez] leave the victim's apartment shortly after dark.  She overheard Choco say to [Gonzalez] that "he was going to fix it, that he was going to kill it - kill him."  Id. at 252.  True to their promise, Choco and [Gonzalez] returned and again entered the victim's residence.  N.T. 1/26/2005 pp. 248-250.  Ten (10) minutes later Ms. Carrasquillo observed [Gonzalez] and Choco flee as she heard someone scream, "They killed him.  They killed him."  N.T. 1/25/2005 p. 212.

Ms. Carrasquillo testified that a few weeks later she had the occasion to speak with [Gonzalez] again.  She was conversing with him on his front porch, when [Gonzalez] noticed a rival drug dealer on the corner.  Upon seeing the dealer, [Gonzalez] uttered to Ms. Carrasquillo that "he was angry" and that "the gun that killed Polo wanted to kill again."  Id. at 254.  Later that night, members of law enforcement apprehended a suspect in the pending criminal investigation.  A nervous [Gonzalez], having an object in his pants and making a motion as if grasping something on his left hip, asked Ms. Carrasquillo to knock on the door of "the Dominicans" and deliver a gun that he had on his person.  Id. at 255.  She told him that she would not comply with his request.  Id.

Commonwealth v. Gonzalez, No.418/04 at 4-6 (Berks Co. Ct. Com. Pl. Dec. 30, 2005);

see also Commonwealth v. Gonzalez, 1431 MDA 2005, slip op. at 1-3 (Pa. Super. August 8, 2006) (unpublished memorandum).

In addressing Gonzalez's challenge to the sufficiency of the evidence underlying his conviction for first degree murder, the Superior Court stated:

> The record reflects that, on October 6, 2001, [Gonzalez] was present at the apartment of Hipolito "Polo" Sanabria at 348 North 9[th] street when a dispute over the ruined cocaine - the alleged reason for the killing - took place between "Polo" and Ricardo "Choco" Santana. [Gonzalez] and Choco sold drugs together in the same place on the corner of North 9th Street.  N.T., 1/26/05, at 248.  As [Gonzalez] and Choco left the apartment, Choco said to him that "he was going to fix it, the he was going to kill it - kill him."  Id. at 252.  [Gonzalez] later returned to the apartment with a third man, identified as "Eli," and Choco, who was seen carrying a .45 gun.  N.T. 1/25/05, at 189, 196.  The victim was shot shortly thereafter.
>
> Weeks later, [Gonzalez] became angry upon seeing a rival drug-dealer and uttered that "the gun that killed Polo wanted to kill again."  N.T. 1/26/05, at 254.  Later the same night, in a nervous fashion [Gonzalez] asked one of the witnesses to deliver a gun to "the Dominican's" for him, with a noticeable bulge in his pants pocket.  Id. at 255.

Commonwealth v. Gonzalez, No. 1431 MDA 2005, at 6-7 (Pa. Super. Aug. 8, 2006) (unpublished memorandum).  The Superior Court concluded that "[v]iewed in the light most favorable to the Commonwealth as verdict winner, the record contains sufficient evidence to support a finding that [Gonzalez] participated in the murder and acted with specific intent that the victim be killed."  Id. at 7.

The state court next reviewed Gonzalez's challenge to his conviction for *conspiracy* to commit first degree murder.  In supporting its conclusion that a "web of evidence reveals more than [Gonzalez's] mere presence at the crime scene," the court noted:

> The record reflects that [Gonzalez] left the victim's apartment with Choco and returned with him shortly thereafter, knowing that Choco had the intent to inflict harm to the victim.  N.T., 1/26/05, at 252.  Furthermore, the record reflects that [Gonzalez] and Choco were partners in drug sales, and that [Gonzalez] subsequently attempted to hide the murder weapon.

Commonwealth v. Gonzalez, No. 1431 MDA 2005, at 8.  The court determined that this evidence of "premeditation and collusion . . . supports the jury's finding of a conspiratorial agreement."  Id. at 9.

The Supreme Court has recently stated that in order to prevail in a sufficiency of the evidence argument, a defendant must show that the jury's "finding was so insupportable as to fall below the threshold of bare rationality."  Coleman, 132 S.Ct. at 2065.  Gonzalez has not proven that the jury's finding in this case was not supported by the evidence.  As the state court pointed out, Gonzalez and Choco sold drugs together.  After a dispute with the victim over cocaine, witness testimony indicated that Gonzalez knew that Choco intended to return to the apartment to kill the victim and that he willingly accompanied Choco to the apartment.  Evidence also showed that Gonzalez had a gun which he wanted to dispose of after the shooting.  In viewing the evidence in the light most favorable to the Commonwealth, I conclude that the Pennsylvania courts reasonably found that a rational trier of fact could have found beyond a reasonable doubt that the evidence was sufficient to support Gonzalez's conviction for first degree murder as well as conspiracy to commit first degree murder.  See Johnson, 132 S.Ct. at 2065; see also Jackson, 443 U.S. at 318-319.  Because there is sufficient evidence satisfying the

12

elements of first degree murder and conspiracy to commit first degree murder, this claim is denied.

### b.      Conspiracy to Commit Aggravated Assault

In his next claim, Gonzalez challenges the sufficiency of the evidence supporting his conviction for conspiracy to commit aggravated assault under 18 Pa. Cons. Stat. Ann. § 2702(a)(1).[8]  Upon review of this claim, the state court noted that aggravated assault is a lesser included offense of first degree murder.[9]  Commonwealth v. Gonzalez, No. 1431 MDA 2005, at 9 (citing Commonwealth v. Cuevas, 832 A.2d 388, 390 (Pa. 2003)). Because the evidence was sufficient to support Gonzalez's conviction for first degree murder, the state court concluded that the record also contained enough evidence to support a conviction for conspiracy to commit aggravated assault.  Id.

Since the state courts' findings are not contrary to United States Supreme Court precedent nor an unreasonable determination of the facts, the state courts' findings will not be overturned.  28 U.S.C. § 2254(d).  Accordingly, Gonzalez's claim is denied.

---

[8]Under Pennsylvania law, a person is guilty of aggravated assault if he:
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>                                           ***
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon.

18 Pa. Cons. Stat. Ann. § 2702(a)(1), (a)(4).

[9]Gonzalez's conviction for conspiracy to commit aggravated assault merged with his conviction for conspiracy to commit murder of the first degree for purposes of sentencing.  See Commonwealth v. Gonzalez, No.418/04 at 1 n.2 (Berks Co. Ct. Com. Pl. Dec. 30, 2005).

### 2.    Jury Instructions

In his second claim, Gonzalez contends that "the jury instructions for accomplice liability and first degree murder unconstitutionally relieved the state's burden of proof," thereby violating his due process rights.  However, this claim was not presented to the state courts.  Rather, Gonzalez asserted that trial counsel was ineffective for failing to object to the jury instruction as to the intent required for the jury to find Gonzalez guilty of first degree murder.[10]   See App. to Answer to Pet., at A278; see also N.T. 6/23/08, at 4-

---

[10]Specifically, Gonzalez presented the following claims in his PCRA appeal to the Superior Court:
(1) trial counsel's performance fell below an objective standard of reasonableness;
(2) trial counsel did not research and understand the law of criminal conspiracy and accomplice liability, thus violating his due process and equal protection rights as well as his right to effective assistance of counsel;
(3) trial counsel was ineffective for failing to object to the jury instruction as to the intent required for the jury to find Gonzalez guilty of first degree murder; and
(4) trial counsel was ineffective for failing to preserve for review the issue that juror number 9 was coerced into changing her verdict.
See App. to Answer to Pet., at A338.  The Superior Court noted that Gonzalez had presented four questions for appellate review, but did not delineate those claims.  Instead, the court summarized Gonzalez's claims as follows: "all of [Gonzalez's] arguments are founded upon a single asserted premise that prior counsel were ineffective for failing to understand the legal principle that an accomplice, as well as a coconspirator, must individually possess a specific intent to kill to be held liable for a murder of the first degree committed by another."  Id. at A391.  The court then went on to discuss two broad issues: (1) whether all prior counsel were ineffective for failing to object to the jury instructions given by the trial court when the trial court failed to explain the legal principle that an individual must share with the principal actor a specific intent to kill the victim in order for the jury to render a verdict of guilt for murder of the first degree based upon vicarious liability, see App. to Answer to Pet., at A393-A397; and (2) whether all prior counsel were ineffective for failing to preserve for direct appeal a challenge to the decision of the trial court to deny his motion for a mistrial when juror number nine disagreed with the initial verdict of guilty to first degree murder, see App. to Answer to Pet., at A397-A400.
After denying these claims on the merits, the Superior Court addressed the second claim presented in Gonzalez's brief on PCRA appeal to the Superior Court, namely that prior counsels' lack of knowledge of the special rules regarding vicarious liability for murder of the first degree

6.  Obviously his claim that the trial judge's charge relieved the state of its burden of proof to prove murder beyond a reasonable doubt and his claim that counsel was ineffective are different.  It follows that the erroneous jury instruction claim was not made to or ruled upon by the state court.

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.  "The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)).  A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process.  Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004); see also Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the state court as will be employed by the federal court").  The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254).

---

"pervaded the entire defense strategy at trial and resulted in an unfair trial."  Commonwealth v. Gonzalez, No. 1431 MDA 2005, at 12 n.6.  The court determined that this claim was waived because Gonzalez had not specifically raised the claim during his PCRA hearing.  Id. (citing Commonwealth v. Bedell, 954 A.2d 1209, 1216 (Pa. Super. 2008)); see also Pa.R.A.P. 302(a); N.T. 6/23/08, at 4-6.  As a result, this claim was never addressed on the merits by the state court.

Because the due process claim presented here employs a different method of legal analysis than the ineffective assistance of counsel claim presented to the state court, his due process claim was not "fairly presented" to the state courts and is therefore, unexhausted.  See Villot, 373 F.3d at 337; Evans, 959 F.2d at 1231.

I will, however, excuse Gonzalez from exhausting his state remedies for his due process claim because a return to state court would be futile due to "an absence of available State corrective process."  Lines, 208 F.3d at 162.  The only way in which Gonzalez could present this claim in the state court at this time is by filing a second PCRA petition.  See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations.[11]

Although exhaustion is excused, Gonzalez is considered to have procedurally defaulted his claim because state procedural rules bar him from seeking further relief in state courts.  Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).  The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the

_____

[11]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3).  Gonzalez's conviction became final in 2007.

16

procedural default or that a "miscarriage of justice" will occur absent review.  Hubbard v.
Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir.
2002).  The Supreme Court has delineated what constitutes "cause" for the procedural
default: the petitioner must "show that some objective factor external to the defense
impeded counsel's efforts to comply with the State's procedural rule."  Werts, 228 F.3d at
192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the
prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . .
trial created a possibility of prejudice, but that they worked to his actual and substantial
disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 193
(citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to show
he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the
default, the federal court may also consider a defaulted claim if the petitioner can
demonstrate that failure to consider the claim will result in a fundamental miscarriage of
justice.  Coleman, 501 U.S. at 748.  In order to satisfy the fundamental miscarriage of
justice exception, the Supreme Court requires that the petitioner show that a
"constitutional violation has probably resulted in the conviction of one who is actually
innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496).
To satisfy the "actual innocence" standard, a petitioner must show that, in light of new
evidence, it is more likely than not that no reasonable juror would have found him guilty

17

beyond a reasonable doubt.  Schlup, 513 U.S. at 327.

Gonzalez has not provided this court with an explanation for his failure to properly present this claim to the state courts.  As a result, he has not shown cause to excuse his procedural default.[12]  Carrier, 477 U.S. at 488.  Moreover, because Gonzalez makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed.  Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496).  Consequently, federal review of this claim is foreclosed.

Even if, however, I were to find that Gonzalez had properly exhausted his due process claim, I conclude that the claim is without merit.  "To show that a jury instruction violates due process, a habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."  Williams v. Beard, 637 F.3d 195, 223 (3d Cir. 2011) (citing Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (quotation omitted)).  The crux of Gonzalez's argument is that the instruction on accomplice liability invited the jury to convict him of first degree murder

---

[12]Because no cause has been demonstrated, the court need not address the prejudice requirement.  Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

18

without finding that he had the specific intent to kill required by Pennsylvania law.[13]  See 18 Pa. Cons. Stat. Ann. § 2502(a); see Commonwealth v. Huffman, 638 A.2d 961 (Pa. 1994).  In considering whether the jury instruction correctly instructed the jury on specific intent, I must "focus initially on the language that is claimed to be erroneous," but then I "must review this portion of the instructions in the context of the charge as a whole." Bronshtein v. Horn, 404 F.3d 700, 710 (3d Cir. 2005) (citation and internal quotation marks omitted).

At Gonzalez's trial, the court first instructed the jury regarding the specific intent required to find a defendant guilty of first degree murder:

> Now, First Degree Murder, that is murder if the killer has the specific intent to kill, you may find the Defendant guilty of First Degree Murder if you are satisfied that the following three elements have been proven beyond a reasonable doubt.  Now, while I give you these, I must also tell you that the Commonwealth, based upon their closing argument, is not alleging that this particular Defendant actually pulled the trigger that killed Hipolito Sanabria.  So the three main charges deal with the crimes and then you need to listen to Conspiracy and the Accomplice Liability and see whether or not it all fits together, but these are – I have to give the elements of each crime first.
>
> The elements of First Degree Murder: One, Hipolito Sanabria is dead; two, the Defendant killed him; three, that the Defendant did so with the specific

---

[13]Respondents argue that Gonzalez's claim of jury instruction error is a state law issue which is non-cognizable on habeas review.  See Resp't Answer, at 15 (citing Smith v. Horn, 120 F.3d 400, 415 (3d Cir. 1997)).  However, Gonzalez argues that the jury instruction on accomplice liability reduced the Commonwealth's burden of proving intent, one of the essential elements of first degree murder.  Because Gonzalez has not alleged a mere state law error, but rather sets forth a federal constitutional claim that the instruction violated the Due Process Clause of the Fourteenth Amendment, I reject Respondents' contention that this issue is not an appropriate claim for habeas review.  See Smith, 120 F.3d at 414.

intent to kill and with malice.  A person has the specific intent to kill if he has a fully formed intent to kill and is conscious of his own intention.  As my earlier definition of malice indicates, a killing by a person who has the specific intent to kill is a killing with malice.  Stated differently, a killing is a specific intent to kill if it is willful, deliberate and premeditated.

The specific intent to kill, including the premeditation needed for First Degree Murder, does not require planning or previous thought of any particular length of time.  It can occur quickly.  All that is necessary is that there be enough time so that the defendant can and does fully form an intent to kill and is conscious of that intention.

When deciding whether the defendant had the specific intent to kill, you should consider all the evidence regarding his words and conduct and the attending circumstances that may show his state of mind.

(N.T. 1/26/05, at 349-350); App. to Answer to Pet., at A116.  The trial court then gave the

following jury instruction on accomplice liability:

Next is liability for the conduct of an accomplice.  You may find the Defendant guilty of a crime without finding that he personally engaged in the conduct required for commission of that crime or even that he was personally present when the crime was committed.  A Defendant is guilty of a crime if he is an accomplice of another person who commits that crime.

A Defendant does not become an accomplice merely by being present at the scene or knowing about a crime.  He is an accomplice if with the intent of promoting or facilitating the commission of the crime he solicits, commands, encourages, requests the other person to commit that crime or he aids, agrees to aid, or attempts to aid the other person in the planning or committing of the crime.

You may find the Defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crimes were committed and that the Defendant was an accomplice of the person who committed it.

(N.T. 1/26/05, at 359-360); App. to Answer to Pet., at A118.  The trial court also gave the

following instruction on conspiracy:

Now, I need to point out that if you believe that Ricardo Santana committed the murder and that the Defendant was in his company present at the scene and knew they were committing the crime, you cannot infer, ladies and gentlemen, from those acts alone that the Defendant was guilty of conspiracy.  The Defendant is not guilty unless he and the others had an agreement or common understanding and shared the intention to commit the murder.

* * * * *

[A] Defendant may, by reason of being a member of the conspiracy, be liable for a crime that he did not personally commit.  He may be found guilty under this conspiracy theory in some situations where he cannot be convicted under an accomplice theory.  You may find the Defendant guilty of the crime of Murder in the First Degree, Murder in the Third Degree, or Aggravated Assault as a conspirator.

If you are satisfied beyond a reasonable doubt, first, that the Defendant agreed with Ricardo Santana that they or one of them would commit those crimes or that the Defendant would aid Ricardo Santana in committing those crimes; second, that the Defendant so agreed with the intent of promoting or facilitating the commission of that crime; and third, while that agreement remained in effect, one or more of those crimes was committed by Ricardo Santana.

(N.T. 1/26/05, at 358-360); App. to Answer to Pet., at A118.  During jury deliberations, the jury submitted a question to the trial court asking for clarification on the interplay between the charges of first degree murder and conspiracy.  (N.T. 1/26/05, at 404); App. to Answer to Pet., at A129 ("[W]e understand, per your instructions today, that the Defendant can be charged with First Degree Murder even though he was not the shooter but conspired with the shooter; correct?").  In response, the trial court re-instructed the jury on conspirator and accomplice liability.  In doing so, the trial court more specifically

21

tailored the language of conspirator liability:[14]

> You may find the Defendant guilty of the crime of murder as a conspirator if you are satisfied beyond a reasonable doubt that: One, the Defendant agreed with Ricardo Santana that they or one of them would commit the murder or that the Defendant would aid Ricardo Santana in committing the crime of murder; and two, that the Defendant so agreed with the intent of promoting or facilitating the commission of that crime, and; three, while the agreement remained in effect, the crime of murder was committed by Ricardo Santana.

(N.T. 1/26/05, at 406); App. to Answer to Pet., at A130.

Upon review of the jury instructions overall, the state court concluded that the instructions given were adequate:

> [I]n view of (1) the comprehensive instructions given by the trial court upon the *mens rea* elements underlying charges of murder of the first degree and murder of the third degree, (2) the additional instruction on [Gonzalez's] liability for murder of the first degree based upon his role as a conspirator, and (3) the fact that the jury acquitted [Gonzalez] of murder of the third degree, we conclude that the jury was capable of understanding that specific intent was necessary to convict [Gonzalez] as an accomplice or coconspirator to murder of the first degree.

Commonwealth v. Gonzalez, No. 180 MDA 2009, at 9 (Pa. Super. Oct. 19, 2009).

I conclude that the state court decision is reasonable.  "The proper inquiry is whether there is a reasonable likelihood that the jury has applied the challenged instructions in a way that violates the Constitution."  Bronshtein, 404 F.3d at 710.  In giving its accomplice liability instruction, the trial court did not specifically instruct the

---

[14]The jury instruction on accomplice liability given in response to the jury's question was not significantly changed from the original instruction.  (N.T. 1/26/05, at 406-407); App. to Answer to Pet., at A130.

jury that the specific intent necessary for a conviction of first degree murder must be found in both the actual killer and the accomplice.  However, reviewing the instructions in their entirety, in light of Gonzalez's conviction for conspiracy to commit first degree murder, I conclude that any error was harmless.  Bronshtein, 404 F.3d at 712-713; Smith, 120 F.3d at 416-417.

In the instant case, Gonzalez was convicted of both first degree murder and conspiracy to commit first degree murder of the first degree.  As the Pennsylvania Supreme Court explained in Commonwealth v. Wayne:

> A conspiracy to kill presupposes the deliberate premeditated *shared* specific intent to commit murder . . . In this case, the conspiracy was a conspiracy to kill.  The conspiracy had only one object, the deliberate decision to take a life.  Once this jury determined that appellant was guilty of conspiracy, given the sole object of that conspiracy, the only logical conclusion to reach is that this jury also determined, beyond a reasonable doubt, that appellant possessed the specific intent to kill.

720 A.2d 456, 465 (Pa. 1998) (emphasis in original) (quoted with approval in Bronshtein, 404 F.3d at 714).  In a similar manner, this case turned primarily on an assessment of Gonzalez's role as an accomplice and co-conspirator in the murder of the victim.  The jury's ability to distinguish between the degrees of murder was pivotal in this case.  I find that the jury's failure to convict Gonzalez of third degree murder – a crime which does not require a specific intent to kill – as well as their failure to convict him of conspiracy to commit third degree murder, proves that the jury understood that an accomplice to a first

degree murder must also intend to kill the victim.  <u>Contra Laird</u>, 414 F.3d at 429-430.[15]

In this case, given the jury instructions as a whole, I conclude that the disputed charge did not alleviate the Commonwealth's burden of proving that Gonzalez possessed the specific intent to kill.[16]  As a result, this claim is denied.

---

[15]In <u>Laird v. Horn</u>, 414 F.3d 419 (3d Cir. 2005), Laird and his co-defendant were convicted of murder in the first, second and third degrees as well as kidnaping, aggravated assault, unlawful restraint, false imprisonment, conspiracy, and possession of an instrument of crime.  In concluding that the trial court's instruction on accomplice liability lacked the critical instruction that the jury must find that the defendant had the specific intent to kill, the Third Circuit noted the "the jury could easily have convicted Laird of first degree murder based on his conspiring with [the co-defendant] to kidnap or assault [the victim] even if jurors were not convinced beyond a reasonable doubt that Laird intended to kill him."  <u>Id.</u> at 427.  The court concluded that the error was not harmless because Laird had been convicted of both murder and conspiracy generally and there was no way for a reviewing court to determine if the jury understood that an accomplice to a first degree murder must also intend to kill the victim.  <u>Id.</u> at 430.

[16]Although Gonzalez cites <u>Smith v. Horn</u>, 120 F.3d 400 (3d Cir. 1997), in support of his federal due process argument, this case is distinguishable from the instant case.  In <u>Smith</u>, <u>supra</u>, the Third Circuit determined that a habeas petitioner's federal due process rights were violated when the trial court gave a jury instruction on first degree murder and accomplice liability that improperly removed Pennsylvania's burden of proving specific intent.  In that case, two co-defendants were tried for robbing a pharmacy at gun point, and shooting and killing a robbery victim in the process.  <u>Id.</u> at 404.  A crucial issue in the trial was which defendant actually committed the killing and whether the other shared his intent to kill.  <u>Id.</u> at 404-06.  The trial court charged the jury with a standard accomplice instruction that did not address the distinction between an accomplice in the robbery and an accomplice in the murder itself.  <u>Id.</u>  On habeas review, the Third Circuit found that the instruction violated Due Process because it permitted the jury to confuse the status of accomplice to the underlying robbery with the status of accomplice to the homicide.  <u>Id.</u> at 411-16.  The instant matter is clearly distinguishable because the only charges submitted to the jury were murder in the first degree, murder in the third degree, aggravated assault and conspiracy for all three offenses.  <u>See</u> App. to Answer to Pet., at A151.  All of these offenses relate to the assault against the victim and his resulting death.  As a result, the only crimes to which Gonzalez could have been an accomplice were the assault and murder of the victim.  Therefore, there was no danger that the trial court's accomplice instruction would permit the jury to commit the error of reasoning that the Third Circuit identified in <u>Smith</u>.

**<u>CONCLUSION</u>:**

After close and objective review of the arguments and evidence, I conclude that Gonzalez's petition for writ of habeas corpus is meritless.  Accordingly, Gonzalez's petition will be denied.

Similarly, because Gonzalez's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  <u>See</u> 28 U.S.C. § 2254(e)(2); <u>see</u> <u>also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.